UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**TRANSFIELD ER FUTURES LTD.**                                             **CIVIL ACTION**

**VERSUS**                                                                 **NO. 11-099**
                                                                           **c/w NO. 11-754**

**DEIULEMAR SHIPPING S.P.A.**                                              **SECTION "K"(5)**


### ORDER

Before the Court are a Motion to Dismiss filed by Deiulemar Shipping S.p.A. ("Deiulemar") (Doc. 42) and a Motion to Dismiss filed by Deiulemar Compagnia di Navigazione S.p.A. ("DCDN") (collectively "Defendants" both entities being organized and existing under the laws of Italy) (Doc. 46). Transfield E.R. Futures Limited ("Transfield"), an entity organized and existing under the laws of the British Virgin Islands, has opposed these motions. Having reviewed the pleadings, memoranda, exhibits, affidavits, and the relevant law, the Court finds both motions should be denied.

**Background**

During July and September 2008, Transfield as Seller and Defendants as Buyer entered into six forward freight agreements ("FFAs"). FFAs are commitments to perform shipping services in the future. As explained by the court in *Bulk Trading S.A. v. Capex Europe S.A.M.*, 2011 WL 1088762 (E.D.La. March 22, 2011) (Africk, J.)citing *Armanda (Singapore) PTE Ltd. v. North China Shipping Co. Ltd.*, 633 F. Supp.2d 168, 169 (S.D.N.Y. 2009):

> The contractors agree to pay the difference between the price of moving freight or hiring a ship today and the price of those same services at some future time. *Id*. In the shipping industry, FFAs are negotiated with the express purpose of hedging exposure to market risk associated with ocean freight prices. *See Flame S.A. v. Primera Maritime (Hellas) Ltd.,* 2010 WL 481075, at *2 (S.D.N.Y. Feb 2, 2010);

> *Brave Bulk Transp. Ltd. v. Spot on Shipping Ltd*. 2007 WL 3455823, at *1-2 (S.D.N.Y. Oct. 30, 2007).  "Ocean freight is the charge assessed for the carriage of cargo by a vessel and is one of the most fundamental components of maritime commerce." *Flame S.A.,* 2010 WL 481075, at *2.

In the subject agreements, Transfield and the Defendants agreed on the Contract Route(s), Contract month(s), Contract Quantity, Settlement Date and Contract Rates that would govern each particular contract.  Apparently, this arrangement soured.

On June 18, 2010 Defendants commenced in London High Court proceedings against Transfield under the terms of the FFAs alleging that Transfield owes Defendants a little more than $16, 000,000.00, plus interest and costs for the alleged breach of these agreements. Transfield filed its "Defence and Counterclaim" on July 19, 2010 seeking a little less than $42,000,000.00 plus interest and costs. (Doc. 50, Exh. "B,"  Standstill Agreement of February 17, 2011, p. 1, ¶1). In addition, the parties then attempted to secure their respective claims by arresting or attaching each other's assets and property in various jurisdictions.

To that end, Transfield filed the instant suit (C.A. No. 11-99) in New Orleans invoking the Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333, within the meaning of Fed. R. Civ. P. 9(h), invoking Rule B against Deiulemar for maritime attachment of its property,  the M/V LEONARDO LEMBO.  On January 19, 2011, it attached the vessel in the Missispippi River to secure their claims.  Deiulemar Shipping posted security in the sum of $26.6 million by payment of cash into this Court to secure the release of the Vessel.  It then filed an application for countersecurity in the Louisiana proceedings and sought $10,385,973 as security for their claims in London. (Doc. 50, Exh. "B,"  Standstill Agreement of February 17, 2011).

Transfield then threatened to attach the M/V MICHELE IULIANO, another of Defendants vessels in Norfolk, Virginia.  As a result of this, all of the parties entered into a Standstill Agreement executed on February 17, 2011 to enable the parties to negotiate security and countersecurity without prejudice to the claims and counterclaims being pursued in the London High Court Proceedings.  The parties were unable to reach agreement on security within requisite agreed-upon28 days.  So, in order to avoid the further arrest and/or attachment of its vessels in other jurisdictions, the Defendants posted additional security in this Court on April 8, 2011 and Transfield posted countersecurity for the Defendants claims rendering  moot a Motion for Countersecurity (Doc. 17)  previously filed by the Defendants with this Court.

The Standstill Agreement provides that if the parties could not reach agreement within the 28 days on suitable security for their respective claims, the Deiulemar Shipping S.p.A. waived its right to contest the validity of the attachment of the M/V LEONARDO LEMBO in the Louisiana proceedings and  DCDN agreed to appear in a suit filed in this Court for the attachment of the M/V MICHELE IULIANO and post security as if the ship had actually been attached.   Doc. 50, Exh, "B," Standstill Agreement of February 17, 2011, Clause 2.2.4).  That suit was filed, *Transfield ER Futures Limited v. Deiulemar Compagnia di Navigazione S.P.A.*, C. A. No. 11-794, and was consolidated with the original Transfield suit, C. A. No. 11-99. In addition clause 7.1 of the Standstill Agreement states unequivocally:

> This Agreement and any matters and disputes relating to it or to its subject matter are subject to General Maritime Law of the United States and the exclusive jurisdiction of the United states District Court for the Eastern District of Virginia and/or United States District Court for the Eastern District of Louisiana.

Standstill Agreement, Clause 7.1.    With that as background, the Court now turns to the issue at hand.

3

**Legal Analysis**

In spite of the aforementioned Standstill Agreement, Defendants filed the two instant motions contending that the FAAs are not maritime contracts, that as such this Court has no admiralty subject matter jurisdiction, and that all claims by Transfield against Defendant should be dismissed with prejudice at Transfield's cost.  Specifically, Defendants contend that because FFAs are not maritime contracts, the Rule B attachments which are the subject of both lawsuits must be vacated and the Rule 9(h) complaints must be dismissed.

It is beyond peradventure that 28 U.S.C. § 1331(1) affords Court original jurisdiction in any civil case of admiralty of maritime jurisdiction, and that a party may only seek Rule B attachment if the underlying claim satisfies admiralty jurisdiction thereunder.  *Alphamate Commodity GMBH v. CHS Europe SA*, 627 F.3d 183 (5th Cir. 2010).  As stated by the United States Court of Appeals for the Fifth Circuit:

> In order to be considered maritime, there must be a *direct and substantial link* between the contract and the operation of the *ship, its navigation or its management afloat*, taking into account the needs of the shipping industry, for the very basis of the constitutional grant of admiralty jurisdiction was to ensure a national uniformity of approach to world shipping.

*Id.* citing 1 *Benedict on Admiralty* §182 (2010) (emphasis added).

As noted above, the very essence of these FAAs concerns commitments to perform shipping services in the future.  The subject FAAs contained agreements concerning the contract routes, contract months, contract quantity, the date upon which payment was due for such services and contract rates that would govern each particular contract.  Indeed, it was the calculation of the payment that was due and by whom thereunder that is at issue.  Clearly, these Forward Freight Agreements can fairly be said to be maritime contracts.  Indeed, this Court is

not alone is so finding.  *Flame S.A. v. Primera Maritime (Hellas) Limited*, 2010 WL 481075 (S.D.N.Y. Feb. 2, 2010) (financial nature of Forward Freight "Swap" Agreement does not change its maritime status).  *Federal Practice and Procedure*, § 675, n. 4; *Brave Bulk Transport Ltd. v. Spot on Shipping Ltd.*, 2007 WL 3255823, at *2 (S.D.N.Y. Oct. 30 2007) and cases cited therein; *Bulk Trading S.A. v. Capex Europe S.A.M.* , 2011 WL 1088762 (E.D.La. March 22, 2011).  As such this Court properly has exercised jurisdiction over these Rule B attachment actions.  Accordingly,

    **IT IS ORDERED** Deiulemar Shipping S.p.A.  ("Deiulemar") (Doc. 42) and a Motion to Dismiss filed by Deiulemar Compagnia di Navigazione S.p.A. ("DCDN") (collectively "Defendants" (Doc. 46) are **DENIED**.

    New Orleans, Louisiana, this 16th day of January of 2012.

*[signature]*

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**
